UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


JACK R. HAIRSINE,               )
                                )
         Plaintiff,             )
                                )
         v.                     )   Civil No. 05-1884 (RMC)
                                )
BRUCE R. JAMES, PUBLIC PRINTER  )
OF THE UNITED STATES            )
GOVERNMENT PRINTING OFFICE,     )
                                )
         Defendant.             )
_____ )


DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

     Defendant Bruce R. James, Public Printer of the United
States Government Printing Office, by his undersigned counsel,
respectfully moves the Court, pursuant to Rule 56 of the Federal
Rules of Civil Procedure, for an order granting defendant summary
judgment on the grounds that no genuine issue of material fact
exists and defendant is entitled to judgment as a matter of law.
In support of this motion, the Court is respectfully referred to
the accompanying statement of material facts, the memorandum of
points and authorities, the exhibits, and the testimony of
individuals with personal knowledge of the facts in question.  A

proposed order is also attached.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACK R. HAIRSINE,                    )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )    Civil No. 05-1884 (RMC)
                                     )
BRUCE R. JAMES, PUBLIC PRINTER)
OF THE UNITED STATES                 )
GOVERNMENT PRINTING OFFICE,          )
                                     )
          Defendant.                 )
_____    )

DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Civil Rule 7(h), defendant hereby submits his statement of material facts as to which there is no genuine issue:

Background

1.  Plaintiff is a Caucasian male who at all times relevant to this case was employed as an offset stripper in the Copy Prep Unit of the Pre-Press Section of the Electronic Printing Division [EPD] of the Government Printing Office.  Complaint, ¶ 7.

2.  In April 2004, three vacancy announcements were issued for the Copy Prep Unit: (1) Vacancy Announcement 04-162 for a "Head Deskperson" for Shift 1; (2) Vacancy Announcement 04-161 for a "Head Deskperson" for Shift 2, and (3) Vacancy Announcement 04-163, for a "Group Chief" position for Shift 3.  Exh 1 at 2; Exh. 2 at 1-2.

3.  Plaintiff applied for all three positions but was not

selected.  Complaint, ¶¶ 13-16.

4.  At the time plaintiff applied for the positions, plaintiff was working on Shift 2.  Exh. 3 at 34.  Plaintiff has been working continuously on Shift 2 since 1994.  Id.

5.  Mr. Dannie Young was involved in making the selection decisions, and he relied upon the recommendations made by Frederick Hall, who worked for the Production Manager in the section where all of the applicants worked.  Exh. 1 at 2; Exh. 4 at 28-29.

7.  Mr. Hall reviewed all the applications for the positions listed in paragraph two above and made recommendations for selection to Mr. Young.  Id.; Exh. 4 at 23.

8.  Plaintiff considers Mr. Hall to be his friend.  Exh. 3 at 105-06.

### Head Deskperson: Shift 1

9.  Mr. Hall recommended to Mr. Young that he select Sarah Pitt, an African-American, for the Head Deskperson position for Shift 1.  Exh. 1 at 2; Exh. 2 at 1-2.

10.  At the time of this recommendation, Ms. Pitt was working on the incoming desk on Shift 1 in the Copy Prep Unit, which required her to take care of jobs that were coming into the Unit by, among other things, making out control cards, scheduling the work, handling queries and approving press sheets.  Exh. 4 at 44-46.

11.  Mr. Hall recommended Ms. Pitt to Mr. Young because he believed that she was familiar with the overall operation of the office and her shift duties and that she had acted as the Head Deskperson for Shift 2.  Exh. 4 at 46-48, 58-60; Exh. 5 at 2.

12.  Mr. Young selected Ms. Pitt for the position of Head Deskperson for Shift 1 based in part on Mr. Hall's recommendation.  Exh. 2 at 2.  Mr. Young understood that certain duties performed during Shift 1, such as dealing with the Code of Federal Regulations and Presidential Documents, were primarily performed only during Shift 1.  Exh. 2 at 1-2; Exh. 4 at 58-60, Exh. 6 at 107-08.

13.  Mr. Young concluded that Ms. Pitt was the best candidate to understand and direct the work on Shift 1.  Exh. 2 at 2.

14.  At the time of the selections, plaintiff had not worked on Shift 1 for ten years.  Exh. 3 at 34, 70.

### Head Deskperson: Shift 2

15.  Mr. Hall recommended to Mr. Young that he select Fletcher Ruffin, an African-American, for the Head Deskperson position for Shift 2.  Exh. 1 at 2; Exh. 2 at 1-2.

16.  Mr. Hall based this recommendation on the fact that Mr. Ruffin had more experience in the overall operation of the Copy Prep Unit than any of the other applicants and had been placed in charge when the supervisor was absent.  Exh. 4 at 56-57; Exh. 5

3

at 2.

17.  Mr. Ruffin had trained plaintiff to perform various duties in the Copy Prep Unit.  Exh. 3 at 42.

18.  Mr. Ruffin worked periodically as acting Head Deskperson on Shift 2, and for a period received back pay for performing this job because he worked in the position thirty-one consecutive days.  Exh. 3 at 85.

19.  Mr. Young selected Mr. Ruffin for the position of Head Deskperson for Shift 2 based in part on Mr. Hall's recommendation.  Exh. 2 at 1.  Mr. Young also selected Mr. Ruffin because Mr. Ruffin had been serving as the acting Head Deskperson on Shift 2 for a substantial period of time, including a continuous period that was long enough to qualify Mr. Ruffin for back pay.  Id.

20.  Plaintiff does not believe that he was better qualified than Mr. Ruffin for the Head Deskperson position for Shift 2. Exh. 3 at 88-89.

<u>Group Chief: Shift 3</u>

21.  Mr. Hall recommended to Mr. Young that he select Charles Brown, an African-American, for the Group Chief position for Shift 3.  Exh. 5 at 2.  Mr. Hall believed that Mr. Brown had demonstrated leadership capabilities while working on Shift 3 and that Mr. Brown had shown more initiative than plaintiff.  Id.; Exh. 4 at 60.  Mr. Hall found Mr. Brown to be knowledgeable about

all the operations done in the Copy Prep Unit and very

personable, and believed that Mr. Brown performed good work.

Exh. 4 at 60-62.

22.  Mr. Young selected Mr. Brown for the position of Group

Chief for Shift 3 based in part on Mr. Hall's recommendation.

Exh. 2 at 1.  Mr. Young also selected Mr. Brown because he

believed that Mr. Brown had been performing most of the duties of

the Group Chief position on an informal basis before the vacancy

announcement for the position had been posted.  Exh. 2 at 2.

23.  Plaintiff had not worked on Shift 3 since 1994.  Exh. 3

at 30-32.

Respectfully submitted,


_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACK R. HAIRSINE,                    )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )     Civil No. 05-1884 (RMC)
                                     )
BRUCE R. JAMES, PUBLIC PRINTER)
OF THE UNITED STATES                 )
GOVERNMENT PRINTING OFFICE,          )
                                     )
          Defendant.                 )
_____      )

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Preliminary Statement

     Plaintiff, an employee of the Government Printing Office
[GPO], brought this action under Title VII of the Civil Rights
Act of 1964, as amended, 42 U.S.C. § 2000e-16, alleging
discrimination based on race.  In particular, plaintiff, a
Caucasian male, alleges that he was discriminated against when he
was not selected for one of three vacant posted positions in the
Copy Prep Unit of the Pre-Press Section of the Electronic
Printing Division [EPD].

     Defendant is entitled to summary judgment on plaintiff's
claims of non-selection.  Plaintiff was not selected for one of
these three positions because he was found to be less qualified
than the individuals selected.  Indeed, one of the individuals
who concluded that plaintiff was less qualified for these
positions, and recommended against his selection, was and is a

friend and former supervisor of plaintiff's.  The selecting official relied in part upon this recommendation, and the fact that he concluded that the individuals selected had all demonstrated superior ability to perform in the positions for which they were selected.  Such selection decisions were comfortably within GPO's prerogative to manage its employment affairs, and plaintiff cannot show any evidence of pretext.

Accordingly, for the reasons set forth in this memorandum and accompanying exhibits, defendant respectfully submits that he is entitled to summary judgment.

<u>FACTUAL BACKGROUND</u>

Plaintiff is a Caucasian male who at all times relevant to this case was employed as an offset stripper in the Copy Prep Unit of the Pre-Press Section of the Electronic Printing Division [EPD] of the Government Printing Office.  Complaint, ¶ 7.

In April 2004, three vacancy announcements were issued for the Copy Prep Unit: (1) Vacancy Announcement 04-162 for a "Head Deskperson" for Shift 1; (2) Vacancy Announcement 04-161 for a "Head Deskperson" for Shift 2, and (3) Vacancy Announcement 04-163, for a "Group Chief" position for Shift 3.  Exh 1 at 2; Exh. 2 at 1-2.  Plaintiff applied for all three positions but was not selected.  Complaint, ¶¶ 13-16.

At the time plaintiff applied for the positions, plaintiff was working on Shift 2.  Exh. 3 at 34.  Plaintiff has been

2

working continuously on Shift 2 since 1994.  Id.

The selecting official for the three positions at issue in this case was Dannie Young, Superintendent of EPD.  Exh. 1 at 2. Because he was not the immediate supervisor for the positions at issue, Mr. Young relied upon the recommendations made by Frederick Hall, who worked for the Production Manager where all of the applicants worked.  Exh. 1 at 2; Exh. 4 at 28-29.  Mr. Hall, a friend of plaintiff's, reviewed all the applications for the positions listed above and made recommendations for selection to Mr. Young.  Id.; Exh. 4 at 23.  Mr. Hall did not recommend plaintiff for any of these positions.  Exh. 5.

### Head Deskperson: Shift 1

Mr. Hall recommended to Mr. Young that he select Sarah Pitt, an African-American, for the Head Deskperson position for Shift 1.  Exh. 1 at 2; Exh. 2 at 1-2.  At the time of this recommendation, Ms. Pitt was working on the incoming desk in the Copy Prep Unit, which required her to take care of jobs that were coming into the unit by, among other things, making out control cards, scheduling the work, handling queries and approving press sheets.  Exh. 4 at 44-46.  Mr. Hall recommended Ms. Pitt to Mr. Young because she was familiar with the overall operation of the office and her shift duties and she had acted as the Head Deskperson for Shift 2.  Exh. 4 at 46-48, 58-60; Exh. 5 at 2.

Mr. Young selected Ms. Pitt for the position of Head

3

Deskperson for Shift 1 based in part on Mr. Hall's
recommendation.  Exh. 2 at 2.  Mr. Young understood that certain
duties performed during Shift 1, such as dealing with the Code of
Federal Regulations and Presidential Documents, were primarily
performed only during Shift 1.  Exh. 2 at 1-2; Exh. 4 at 58-60,
Exh. 6 at 107-08.  Accordingly, Mr. Young concluded that Ms. Pitt
was the best candidate to understand and direct the work on Shift
1.  Exh. 2 at 2.

At the time of this selection, plaintiff had not worked on
Shift 1 for ten years.  Exh. 3 at 34, 70.

### Head Deskperson: Shift 2

Mr. Hall recommended to Mr. Young that he select Fletcher
Ruffin, an African-American, for the Head Deskperson position for
Shift 2.  Exh. 1 at 2; Exh. 2 at 1-2.  Mr. Hall based this
recommendation on the fact that Mr. Ruffin had more experience in
the overall operation of the Copy Prep Unit and had been placed
in charge of Shift 2 when the supervisor was absent.  Exh. 4 at
56-57; Exh. 5 at 2.

Mr. Ruffin had worked on Shift 2 for a lengthy period of
time.  See Exh. 3 at 42.  Indeed, Mr. Ruffin had trained
plaintiff to perform various duties in the Copy Prep Unit.  Exh.
3 at 42.  In fact, plaintiff believed that Mr. Ruffin was the
most experienced person in the Copy Prep Unit for all three
shifts, that he was very supportive to everyone, that he knew his

4

job, and that he was the best teacher.  Exh. 3 at 44.

Mr. Ruffin worked periodically as acting Head Deskperson on Shift 2, and for one period he received back pay for performing this job for thirty-one consecutive days.  Exh. 3 at 85.  By contrast, plaintiff never received back pay for working as the acting Head Deskperson for Shift 2.  Exh. 3 at 85-86.

Mr. Young selected Mr. Ruffin for the position of Head Deskperson for Shift 2 based in part on Mr. Hall's recommendation.  Exh. 2 at 1.  Mr. Young also selected Mr. Ruffin because Mr. Ruffin had been serving as the acting Head Deskperson on Shift 2 for a substantial period of time, including a continuous period that was long enough to qualify Mr. Ruffin for back pay.  Id.

Plaintiff concedes that he is not better qualified than Mr. Ruffin for the Head Deskperson position for Shift 2.  Exh. 3 at 88-89.

### Group Chief: Shift 3

Mr. Hall recommended to Mr. Young that he select Charles Brown, an African-American who is now deceased, for the Group Chief position for Shift 3.  Exh. 5 at 2.  Mr. Hall believed that Mr. Brown had demonstrated leadership capabilities and that he had shown more initiative than plaintiff.  Id.; Exh. 4 at 60. Mr. Hall found Mr. Brown to be knowledgeable about all the operations done in the Copy Prep Unit and on his shift, and he

was very personable.  Mr. Hall also found from his observations that Mr. Brown performed good work.  Exh. 4 at 60-62.

Mr. Young selected Mr. Brown for the position of Group Chief for the Shift 3 based in part on Mr. Hall's recommendation.  Exh. 2 at 1.  Mr. Young also selected Mr. Brown because he believed that Mr. Brown had been performing most of the duties of the Group Chief position on an informal basis before the vacancy announcement for the position had been posted.  Exh. 2 at 2.

Plaintiff had not worked on Shift 3 since 1994.  Exh. 3 at 30-32.

## ARGUMENT

I.   Defendant is Entitled to Summary Judgment
     On Plaintiff's Claims.

A.   Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment: "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

6

The party moving for summary judgment bears the initial responsibility of demonstrating the basis for his or her motion and identifying those portions of the record showing the absence of a genuine issue of material fact.  Id. at 323; Alexis v. District of Columbia, 44 F. Supp.2d 331, 337 (D.D.C. 1999).  To determine if the dispute about a material fact is "genuine," the Court must decide whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248.  See also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Alexis, 44 F. Supp.2d at 337.  The mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  See Anderson, 477 U.S. at 247-48.  The trial court must enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322; see also Alexis, 44 F. Supp. 2d at 337 ("Rule 56(c) mandates

7

summary judgment" in this circumstance).

      B.   <u>Deference Due to Agency Decisions</u>

Before turning to the merits, a brief word is in order concerning the scope of review in employment discrimination cases.  Though plaintiff might wish it otherwise, the employment discrimination statutes did not transform federal courts into review boards for local employment decisions.  The Court of Appeals for this Circuit has made clear that "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'"  <u>Barbour</u> v. <u>Browner</u>, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (<u>quoting</u> <u>Dale</u> v. <u>Chicago Tribune Co.</u>, 797 F.2d 458, 464 (7th Cir. 1986)).  To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'"  <u>Fischbach</u> v. <u>District of Columbia Dep't of Corrections</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting <u>Milton</u> v. <u>Weinberger</u>, 696 F.2d 94, 100 (D.C. Cir. 1982)).

      C.   <u>Allocation of Burdens of Production and Persuasion</u>

The burden-shifting framework of <u>McDonnell Douglas Corp.</u> v. <u>Green</u>, 411 U.S. 792, 803-805 (1973), governs the analysis of plaintiff's discrimination and retaliation claims.  <u>Cones</u> v. <u>Shalala</u>, 199 F.3d 512, 516 (D.C. Cir. 2000).  Under this test, the plaintiff has the initial burden of proving by a preponderance of the evidence a "<u>prima facie</u>" case of

discrimination.  <u>Texas Dep't of Community Affairs</u> v. <u>Burdine</u>, 450
U.S. 248, 252-53 (1981).  If the plaintiff is able to establish a
<u>prima facie</u> case, the burden shifts to the defendant to produce
credible evidence that his or her actions were taken for a
legitimate, nondiscriminatory reason.  <u>Id</u>.  The defendant's
burden is one of production, not of proof, and is satisfied if it
simply explains what it has done or produces evidence of
legitimate nondiscriminatory reasons.  <u>See</u> <u>St. Mary's Center</u> v.
<u>Hicks</u>, 509 U.S. 502, 509 (1993).

      If the defendant meets this burden of production, the burden
shifts back to the plaintiff to present evidence that the stated
reason was pretextual.  <u>Id</u>.  A reason cannot be proved to be
pretext unless it is shown "both that the reason was false **and**
that discrimination was the real reason."  <u>Hicks</u>, 509 U.S. at 515
(emphasis added).  At all times, the plaintiff retains the
ultimate burden of persuasion to demonstrate that he was in fact
the victim of intentional discrimination.  <u>Id</u>.  Moreover, a
plaintiff cannot create a factual issue of pretext based merely
on personal speculation of discriminatory intent.  <u>Greene</u> v.
<u>Dalton</u>, 164 F.3d 671, 675 (D.C. Cir. 1999).  To avoid summary
judgment on the ultimate issue, a plaintiff alleging
discrimination must produce some objective evidence that the
asserted reason is mere pretext and that, as a result, the
defendant's actions were the product of discriminatory intent.

9

See Phillips v. Holladay Property Services, Inc., 937 F. Supp. 32, 35 n.2 (D.D.C. 1996).

> D.    Plaintiff Cannot Prove Discrimination Based on Disparate Treatment.

As explained above, the decisions at issue in this case concern three non-selection for promotion decisions.   In order to prevail in a case pursuant to Title VII, a plaintiff must initially establish at least a prima facie case of prohibited discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. at 803-05; Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc) ("under the McDonnell Douglas framework, the complainant must first establish a prima facie case").  As a general matter, to establish a prima facie case of disparate treatment discrimination, a plaintiff must demonstrate by a preponderance of the evidence that (1) he is a member of a protected group, (2) he suffered from an adverse personnel action; and (3) the unfavorable action gives rise to an inference of discrimination.  Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).

In a case involving reverse discrimination such as the instant one, where a Caucasian is attempting to prove that he was discriminated against on the basis of race, plaintiff also must overcome the fact that in this society reverse discrimination is considered to be a rare occurrence.

As the Court of Appeals for this Circuit has noted,

"[i]nvidious racial discrimination against whites is relatively
uncommon in our society, and so there is nothing inherently
suspicious in an employer's decision" to take action that has an
adverse consequence for a white employee.  <u>Harding</u> v. <u>Gray</u>, 9
F.3d 150, 153 (D.C. Cir. 1993); <u>Plummer</u> v. <u>Safeway, Inc.</u>, 1995 WL
129100, *2 (D.D.C. 1995).  Consequently, the Court of Appeals has
required a white male alleging reverse discrimination to
demonstrate "background circumstances [that] support the
suspicion that the defendant is that unusual employer who
discriminates against the majority."  <u>Harding</u>, 9 F.3d at 153;
<u>Parker</u> v. <u>Baltimore & Ohio R.R. Co.</u>, 652 F.2d 1012, 1017 (D.C.
Cir. 1981).  In short, plaintiff here must show that "there is
something 'fishy' about the facts of the case at hand that raises
an inference of [reverse] discrimination."  <u>Harding</u>, 9 F.3d at
153.

    With respect to promotion decisions, the Court of Appeals in
<u>Harding</u> held that the promotion of a minority applicant with
lesser qualifications than those of a more qualified white
applicant could raise an inference of reverse discrimination
because a rational employer will be expected to promote the more
qualified candidate.  <u>Id</u>. at 153.  However, and significantly, a
white plaintiff must be able to point to facts in the record to
show the existence of superior qualifications.  "A mere
unsubstantiated allegation of superior qualifications creates no

11

'genuine issue of fact' and will not withstand summary judgment."
Id. at 154, quoting Celotex, 477 U.S. at 322-23.

Although the Supreme Court recently made clear that the
existence of superior qualifications does not have to "jump off
the page and slap you in the face," Ash v. Tyson Foods, Inc., 126
S. Ct. 1195, 1197-98 (2006), the Court of Appeals for this
Circuit in Aka, has held that a plaintiff must show that he or
she is "significantly better qualified for the job." Id., 156
F.3d at 1294. Moreover, recently in Barnette v. Chertoff, 453
F.3d 513 (D.C. Cir. 2006), the Court of Appeals reiterated that
courts must defer to agency decisions as to which qualities for a
job it weighs more heavily and should refuse to assess the
significance of small differences in substantive experience. Id.
at 517, citing Stewart v. Ashcroft, 352 F.3d 422 (D.C. Cir.
2003).

Here, plaintiff cannot show that he was significantly better
qualified for the positions to which he was not selected.

(1) Selection of Sarah Pitt

As demonstrated above, Ms. Pitt was selected for the Head
Deskperson position for Shift 1, a shift on which plaintiff had
not worked for approximately ten years. The duties of that shift
differed from the duties normally performed on Shift 2, and thus
Mr. Hall and Mr. Young could reasonably have concluded that Ms.
Pitt would have greater familiarity with the duties being

12

performed on Shift 1 than would plaintiff.  Additionally, Ms. Pitt had served as an acting Head Deskperson for Shift 1, and thus had experience in the very position for which she was selected.  Plaintiff can point to no credible evidence that he was better qualified than Ms. Pitt to assume all of the duties on a shift on which he had not worked for ten years.

(2) <u>Selection of Fletcher Ruffin</u>

Plaintiff's claim concerning Mr. Ruffin's selection patently fails.  Plaintiff did not even allege in his Complaint that he was better qualified than Mr. Ruffin for the position of Head Deskperson for Shift 2.  <u>See</u> Complaint, ¶¶ 13-17.  Indeed, plaintiff concedes that Mr. Ruffin was already on Shift 2 when plaintiff was assigned to that shift and that Mr. Ruffin trained him to perform the duties on Shift 2.  Plaintiff also concedes that Mr. Ruffin was "the most experienced person in the section on all three shifts," that Mr. Ruffin "was very supportive to everyone," and that Mr. Ruffin was "the best teacher around." Exh. 3 at 44.  Plaintiff also concedes that he was not better qualified than Mr. Ruffin for the position of Head Deskperson for Shift 2.  <u>Id</u>. at 88-89.  Given such an important concession, plaintiff clearly fails to demonstrate that his non-selection for the position of Head Deskperson for Shift 2 was the product of discrimination.  <u>See</u> <u>Aka</u>, 156 F.3d at 1294 (for a court to infer pretext, the plaintiff must have shown himself to be

13

significantly better qualified for the position).

       (3) <u>Selection of Charles Brown</u>

_____As with Ms. Pitt, Mr. Brown was selected for a leadership position on Shift 3 where he had worked, and on which plaintiff had not worked for approximately ten years.  Mr. Brown had also worked in an acting capacity in the position for which he was selected, and had shown initiative to Mr. Hall and the capability to perform all of the job duties in that section.  <u>See</u> <u>supra</u> at 5-6.

    Plaintiff can point to no credible evidence that he was significantly better qualified than Mr. Brown for the position of Group Chief for Shift 3.  Plaintiff had not even worked in that section for approximately ten years.  Under the circumstances, there simply is no evidence of discrimination in connection with Mr. Brown's selection.

CONCLUSION

Accordingly, for the reasons set forth above, summary judgment should be granted to defendant.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


JACK R. HAIRSINE,                    )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )   Civil No. 05-1884 (RMC)
                                     )
BRUCE R. JAMES, PUBLIC PRINTER)
OF THE UNITED STATES                 )
GOVERNMENT PRINTING OFFICE,   )
                                     )
          Defendant.                 )
_____ )

ORDER

        Upon consideration of defendant's motion for summary

judgment, plaintiff's responding opposition, and the entire

record in this case, and it appearing to the Court that the grant

of defendant's motion would be just and proper, it is hereby

        ORDERED that defendant's motion for summary judgment is

granted; and it is further

        ORDERED that this case is dismissed with prejudice.


                              _____
                              UNITED STATES DISTRICT JUDGE




Marina Utgoff Braswell
Assistant U.S. Attorney
U.S. Attorney's Office
555 4th St., N.W.
Washington, D.C. 20530

Theodore S. Allison, Esq.
KARR & ALLISON P.C.
1920 N Street, N.W., Suite 300

Washington, D.C. 20036