UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
JACK R. HAIRSINE,                )
                                 )
        Plaintiff,                )
                                 )
        v.                       )   Civil No. 05-1884 (RMC)
                                 )
BRUCE R. JAMES, PUBLIC PRINTER)
OF THE UNITED STATES             )
GOVERNMENT PRINTING OFFICE,      )
                                 )
        Defendant.               )
                                 )
```

MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Preliminary Statement

In this action brought against the Government Printing Office [GPO] under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, plaintiff originally alleged that he was discriminated against when he was not selected for one of three vacant posted positions in GAO's Copy Prep Unit of the Pre-Press Section of the Electronic Printing Division [EPD].  The three vacancy announcements were for positions as: (1) "Head Deskperson" for Shift 1; (2) "Head Deskperson" for Shift 2, and (3) "Group Chief" position for Shift 3.  Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment, Docket No. 16 [Defendant's Mem.], Exh. 1 at 2; Exh. 2 at 1-2.  Plaintiff's opposition to defendant's dispositive motion, however, now claims that he was "denied two promotions on the basis of race," so it appears that plaintiff has abandoned his claim with respect to

the third non-promotion.

As a threshold matter, defendant demonstrated that at the time plaintiff applied for the positions at issue, plaintiff was working on Shift 2 and had been assigned to work on that shift since 1994.  Defendant's Mem., Exh. 3 at 34.  Plaintiff does not refute this fact with any evidence, notwithstanding his alleged "dispute" regarding this statement of material fact; plaintiff's "dispute" consists of nothing more than an argument as to the import of this unrefuted fact.  Plaintiff's Opposition Memorandum [Plaintiff's Opp.] at 2, ¶ 4.  Indeed, although purporting to dispute many of defendant's statements of material fact not in dispute, a thorough review of plaintiff's alleged disputes shows that plaintiff usually offers no evidence to dispute the fact alleged.  Rather, plaintiff merely advances arguments as to the significance of the fact alleged.  Defendant will demonstrate the error of plaintiff's alleged disputes to defendant's statement of material facts not in dispute in defendant's discussion of each of the positions at issue in this case.

In that connection, defendant showed that the selecting official for the three positions at issue in this case was Dannie Young, Superintendent of EPD, and that Mr. Young relied upon the recommendations made by Frederick Hall, who had worked for the Production Manager where all of the applicants worked.  Defendant's Mem., Exh. 1 at 2; Exh. 4 at 28-29.  Plaintiff offers

no evidence to refute these narrow factual assertions.[1]
Plaintiff's Opp. at 3, ¶ 5.

### ARGUMENT

Plaintiff concedes that this Circuit in Harding v. Gray, 9 F.3d 150 (D.C. Cir. 1993), held that in a case alleging reverse discrimination the plaintiff must show "superior qualifications" to raise an inference of discrimination. Id. at 153-54; see Plaintiff's Opp. at 17-18. Plaintiff failed to make such a showing with respect to the promotion decisions still at issue.

### Head Deskperson: Shift 1

At the time of her selection for the position of Head Deskperson for Shift 1, Sarah Pitt was working on the incoming desk on Shift 1 in the Copy Prep Unit, which required her to take care of jobs that were coming into the unit by, among other things, making out control cards, scheduling the work, handling queries and approving press sheets. Defendant's Mem. at 3 & Exh. 4 at 44-46. Plaintiff does not offer any evidence to refute these facts. Rather, plaintiff merely argues that this statement

---

[1] Plaintiff argues that Mr. Young did not need to consult Mr. Hall, who had not worked in the Unit for a year, because Mr. Milans who was the then head of the Copy Prep Unit was available. Plaintiff's Opp. at 3, ¶ 5. Even if true, that would not have helped plaintiff. Mr. Milans agreed with Mr. Young's selection decisions. Exh. 7, attached. Moreover, Mr. Hall was the Foreman of the Section in which the Copy Prep Unit was located and knew that plaintiff had trained to perform as the Acting Head Deskperson or Acting Group Chief on Shift 2. Plaintiff's Exh. 16 at 12, 15-16.

3

is "incomplete and incorrectly suggests that Ms. Pitt was qualified for the job." Plaintiff's Opp. at 4, ¶ 10.

Plaintiff argues that Ms. Pitt's application was "false," but fails to identify in what respect her application was false or to offer any evidence that it was false. Plaintiff's citation to a string of exhibits sheds no light on this claim. <u>Id</u>. To the extent plaintiff seeks to challenge Ms. Pitt's assertion in her application that she served as Acting Head Desk Person for Shift 1, <u>see</u> Plaintiff's Opp. at 14, ¶¶ 13-14, & 21, plaintiff's citations do not show this to be false.

Ms. Pitt stated that she served as Acting Head Desk Person. Plaintiff's Exh. 10 at 5-6. Mr. Hall testified that Ms. Pitt served as Acting Head Desk Person. Plaintiff's Exh. 16 at 46-48.[2] The fact that Ms. Pitt did not receive back pay for serving as Acting Head Deskperson, Plaintiff's Exh. 14 at 49, simply means that she had not served in such a position for thirty-one consecutive days. <u>See</u> Defendant's Mem. at 5 & Exh. 3 at 85.

As to what else plaintiff could be referring to as false in Ms. Pitt's application, it remains a mystery. This Court, however, should not have to expend resources guessing as to what plaintiff's claim may be.

Plaintiff alleges that Ms. Pitt had "limited training on the

---

[2] Although Mr. Hall became confused in his deposition as to when Ms. Pitt was in charge, he concluded that she had served in an acting capacity. Plaintiff's Exh. 16 at 46-48.

4

automated aspects of the job, which were significant." Plaintiffs' Mem. at 5, ¶ 10.  Plaintiff's citation to support this claim fails to do so.  Mr. Hall in his deposition testified that Ms. Pitt's training on the computer and scanning functions was "limited," which he explained meant that her training was not as extensive as some but that she had received training in these areas.  Plaintiff's Exh. 16 at 44.  Mr. Hall did not, however, testify that the automated aspects of the job as Head Deskperson for Shift 1 were significant, as plaintiff claims.  See Plaintiff's Mem. at 5, ¶ 10 & Plaintiff's Exh. 16 at 44.

   Plaintiff attempts to further attack Ms. Pitt's computer and scanning capabilities through the Declaration of Dexter Hood, who helped to train individuals at GPO on computers and scanning. Plaintiff's Exh. 13.  Mr. Hood states that at some unknown time prior to Ms. Pitt's selection for this position he was involved in training Ms. Pitt on the computer and in scanning and that she did not do well in these areas.  Id. at ¶ 3.  He then offers his opinion that if the Head Desk Person needed to be competent in computers and scanning, Ms. Pitt was not competent for the position.  Id.  Mr. Hood's mere opinion as to Ms. Pitt's competency in these areas at some unidentified point in time when he trained her is meaningless.  He offers no evidence as to Ms. Pitt's skills in these areas at the time she was selected for the position of Head Deskperson for Shirt 1.  Moreover, plaintiff

5

points to no evidence that competency and skill in this area was a prerequisite for the position of Head Deskperson on Shift 1.

Plaintiff also claims that Ms. Pitt did not appreciate one of the critical aspects of the job – timely completion of work – because her application stated that she was responsible for making sure that various jobs were "not delayed within the section for long periods of time." Plaintiff's Exh. 10 at 5, ¶ 2. However, Ms. Pitt also stated in her application that "[i]t is my ongoing responsibility to ensure that the schedules and deadlines are met within a timely fashion." Id. at 6, ¶ 5. Although Mr. Young testified that one of the duties of a Head Deskperson was to make sure that jobs were not delayed, Plaintiff's Exh. 14 at 49, Ms. Pitt's application demonstrates that she knew schedules and deadlines needed to be met and that she worked to try and ensure any delay that occurred was not for any significant length of time.

Plaintiff also claims that Ms. Pitt's application contains "obvious plagiarism." Plaintiff's Opp. at 4, ¶ 10. Plaintiff claims that Ms. Pitt "blatantly copied Mr. Ruffin's application in several respects." Id. at 14, ¶ 14. Plaintiff's only evidence of this is one paragraph in Ms. Pitt's application and Mr. Ruffin's application that seems virtually identical. Compare Plaintiff's Exh. 6 at 6 with Plaintiff's Exh. 7 at 6. Plaintiff's other evidence, Mr. Ruffin's deposition, provides no

support whatsoever for plaintiff's claim on this issue.

Mr. Ruffin testified that Ms. Pitt did her application on her own and did not ask to see his application or ask him how to describe certain kinds of experience. Plaintiff's Exh. 15 at 63. Plaintiff made no effort to ask Mr. Ruffin during his deposition why his application in this one paragraph sounds like Ms. Pitt's, and plaintiff chose not to depose Ms. Pitt. Mr. Young's deposition, on which plaintiff relies, simply states that he has no explanation for this similarity. Plaintiff's Exh. 14 at 47-48. Therefore, the source for this same language is unknown but plaintiff has failed to prove any plagiarism on the part of Ms. Pitt.

Plaintiff also argues that Ms. Pitt lacks the skills necessary to perform or supervise the work on Shift 2. Plaintiff's Opp. at 21. As support for this claim, plaintiff again cites the Hood Declaration, which makes no mention of Ms. Pitt's supervisory capabilities or her ability to do work other than computer-related and scanning functions. Plaintiff's Exh. 13, ¶ 3. Contrary to plaintiff's claim, Mr. Hall did not essentially "admit"in his deposition that Ms. Pitt was lacking in these areas. Plaintiff's Opp. at 21. On the contrary, Mr. Hall testified that Ms. Pitt "took care of all the jobs that were coming into the section" by performing various roles. Plaintiff's Exh. 16 at 44-45.

Mr. Young selected Ms. Pitt for the position of Head Deskperson for Shift 1 based in part on Mr. Hall's recommendation. Defendant's Mem. At 4 & Exh. 2 at 2. Mr. Young understood that certain duties performed during Shift 1, such as dealing with the Code of Federal Regulations and Presidential Documents, were primarily performed only during Shift 1. <u>Id</u>. at Exh. 2 at 1-2; Exh. 4 at 58-60, Exh. 6 at 107-08. Accordingly, Mr. Young concluded that Ms. Pitt was the best candidate to understand and direct the work on Shift 1. <u>Id</u>. at Exh. 2 at 2. Plaintiff offers no evidence to refute these facts. <u>See generally</u> Plaintiff's Opp.

Try as he does, plaintiff cannot escape the fact that Ms. Pitt was chosen for a leadership position on a shift she worked and to which plaintiff had not been assigned on any regular basis for **ten** years. Defendant's Mem., Exh. 3 at 34, 70. Plaintiff makes no effort to show how he was better qualified for the position of Head Deskperson on Shift 1 than Ms. Pitt, who had served as the Acting Head Deskperson on that shift. Rather, he relies on his experience in the Marines in 1968-1970 -- experience that took place **thirty-four** years before the selections at issue were made. Plaintiff's Opp. at 5, ¶ 11. Such experience hardly shows that plaintiff was sufficiently better qualified than Ms. Pitt for this position such that plaintiff has shown pretext in connection with Ms. Pitt's

selection.[3]  See Aka v. Washington Hospital Center, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc).

### Head Deskperson: Shift 2

Mr. Hall recommended to Mr. Young that he select Fletcher Ruffin, an African-American, for the Head Deskperson position for Shift 2 because Mr. Ruffin had more experience in the overall operation of the Copy Prep Unit and had been placed in charge of Shift 2 when the supervisor was absent.  Defendant's Mem., Exh. 1 at 2; Exh. 2 at 1-2; Exh. 4 at 56-57; Exh. 5 at 2.  Plaintiff does not dispute these facts.  Plaintiff's Opp. at 7, ¶¶ 15-16.

In fact, plaintiff no longer seeks to challenge the selection of Mr. Ruffin for the Head Deskperson position for Shift 2.  See Plaintiff's Opp. at 11-16 (Plaintiff's Statement of Facts Presenting a Genuine Issue for Trial).  Accordingly, defendant is entitled to summary judgment on this selection decision.

### Group Chief: Shift 3

Plaintiff does not dispute that Charles Brown, the selectee for the position of Group Chief on Shift 3, worked on that shift and plaintiff did not.  Plaintiff also offers no evidence to

---

[3] Plaintiff also claims that Ms. Pitt's selection was the product of "pre-selection."  Even if plaintiff could substantiate these claims, which he did not, see Exh. 9, attached, this selection would have prejudiced both white as well as black individuals who ultimately applied for the positions and thus does not constitute discrimination based on race.

dispute Mr. Young's observation that "Mr. Brown worked on the third shift, and had performed most of the duties of the Group Chief job on an informal basis before the job had been posted." Plaintiff's Opp. at 15, quoting Mr. Young's deposition, Plaintiff's Exh. 14 at 57-58.

Rather, plaintiff argues that "Mr. Brown's application showed little or no supervisory ability." Plaintiff's Opp. at 15, citing Plaintiff's Exh. 12. Although Mr. Brown's application did not state that he had served as acting Group Chief or acting Head Deskperson, plaintiff offers no evidence to refute Mr. Hall's observations that he recommended Mr. Brown for the position because he found Mr. Brown to be knowledgeable about all the operations done in the Copy Prep Unit and on his shift, that he knew that Mr. Brown had served as acting supervisor for that shift, that Mr. Brown was very personable and that he performed good work. Defendant's Mem., Exh. 4 at 60-62.

Plaintiff's only other attack on Mr. Brown's selection is to argue that Mr. Brown's application for the Group Chief position was the same application Mr. Brown submitted for the Head Deskperson position on Shifts 1 and 2, which counted against plaintiff when he did that but not against Mr. Brown. Plaintiff's Opp. at 9-10, ¶ 21. Plaintiff's evidence, however, does not demonstrate that Mr. Brown was treated differently than plaintiff with respect to this issue; it only shows that Mr.

Brown's application packages for both positions were also the same. Id. and the citations therein. Obviously, submitting the same application packages for two different positions involving different supervisory duties was not disqualifying, for either Mr. Brown or plaintiff. See Plaintiff's Exh. 14 at 42-43.

The difference between Mr. Brown and plaintiff that plaintiff cannot overcome, however, is the fact that Mr. Brown was working on Shift 3 and therefore more familiar with the duties on that shift than was plaintiff, who was not working on a regular basis on that shift and had not done so for over ten years. Plaintiff offers no evidence to the contrary. Plaintiff's Opp. at 10, ¶ 21.

At most plaintiff states that Mr. Brown would periodically call him with questions about "the work". Plaintiff's Opp. at 13, ¶ 10. Plaintiff carefully does not identify what kind of work Mr. Brown had questions on. Id. Since plaintiff was on Shift 2 and Mr. Brown was on Shift 3, the reasonable assumption is that Mr. Brown was asking plaintiff something about work Shift 2 had done, or not done, that Mr. Brown needed to address in Shift 3. Certainly plaintiff provided no contrary inference.

Plaintiff also cannot overcome the fact that Mr. Hall recommended Mr. Brown for the Group Chief position based on Mr. Hall's personal knowledge of Mr. Brown's work. Although plaintiff is correct that Mr. Hall and Mr. Brown did not work the

same shift, Plaintiff's Opp. at 10, ¶ 21, plaintiff carefully leaves out the evidence that shows that Mr. Hall usually arrived for his morning shift forty-five minutes before Mr. Brown ended his time on the night shift (Shift 3), that Mr. Hall knew Mr. Brown served on occasion as acting head of Shift 3, and that Mr. Hall would receive an update from Mr. Brown on the work Shift 3 had completed, what work still needed to be done, and which work was likely to be on the "hot list" to do.  Defendant's Mem., Exh. 4 at 61-63.  Mr. Hall found Mr. Brown's updates to be "very good."  Id. at 62.  Thus, Mr. Hall plainly had personal knowledge that formed the basis for his recommendation of Mr. Brown.

Plaintiff argues that Mr. Young had no direct experience working with Mr. Brown, but plaintiff's exhibit does not support this claim.  Rather, plaintiff's reference to Mr. Young's deposition merely contains a statement that over the years Mr. Young had spoken to Mr. Brown "very little."  Plaintiff's Opp. at 10, ¶ 21 & Plaintiff's Exh. 14 at 17.  However, Mr. Young also testified in his deposition, a portion conveniently ignored by plaintiff, that between 7:30 and 8:00 in the morning Mr. Young would check into the Copy Prep Unit and Mr. Brown would be there, and that Mr. Young personally observed Mr. Brown serving as the acting Group Chief for that shift.  Exh. 8, attached, at 86-87.  Mr. Young also testified that periodically Mr. Brown would inform him of the status of the work.  Id. at 86.  Thus, Mr. Young had

personal knowledge concerning Mr. Brown that he certainly was not required to ignore when he began evaluating the applicants for Group Chief for Shift 3.

Moreover, and significantly, plaintiff makes no effort to show that he was better qualified for the position than Mr. Brown.  At most he argues that his application package demonstrated supervisory ability and Mr. Brown's application package did not discuss supervisory responsibilities. Plaintiff's Opp. at 13, ¶ 12.  Given Mr. Hall and Mr. Young's personal knowledge of Mr. Brown's supervisory experience on Shift 3, plaintiff's argument is unavailing.

### Plaintiff's Claims Regarding His Qualifications[4]

It is undisputed that the only shift on which plaintiff had worked steadily for the last ten years is Shift 2, and plaintiff no longer contests Mr. Ruffin's selection as Head Deskperson for that shift.  Plaintiff contends that he "possessed at least equal experience to the successful applicants" but he carefully does not explain what the "experience" is to which he refers. Plaintiff's Opp. at 19.  Certainly plaintiff did not have "equal experience" as Ms. Pitt in serving as the Acting Head Deskperson

---

[4] Plaintiff states at the beginning of his memorandum that he "has repeatedly been passed over by his African American supervisors for promotions for which he possessed superior qualifications."  Plaintiff's Opp. at 1.  Like many other of plaintiff's claims no evidence is provided to support this claim, even in plaintiff's own declaration.  See Plaintiff's Exh. 19.

13

for Shift 1; he provides no evidence of such.  See generally Plaintiff's Opp.  Plaintiff also did not have "equal experience" serving as the Acting Group Chief for Shift 3; he provides no evidence of such.  Id.

At most in his declaration plaintiff alleges that he worked on Shift 1 at times when Congress was out of session and that he sometimes did overtime work on Shifts 1 and 3.  Plaintiff's Exh. 19 at ¶ 3.  Plaintiff does not claim, however, that he acted in a supervisory capacity on either Shift 1 or Shift 3.  Id.  he also does not claim that he had more experience on either of this shifts than Ms. Pitt or Mr. Brown.  Id.  He also

Plaintiff alleges that he served as 'acting head deskperson" but does not say for which shift.  Plaintiff's Opp. at 19. Apparently this was for Shift 2, as he claims that Mr. Ruffin and he trained for this position together, and both of them worked on Shift 2.  Id. at 2, ¶ 4.  Such experience hardly makes plaintiff better qualified for the position of Head Deskperson on two other shifts.

Plaintiff also points to his experience in the United States Marines, leading U.S. Marines in "combat and training." Plaintiff's Opp. at 20.  Plaintiff served in the Marines from 1968 through 1970 and he was not in "combat"; he testified that he never encountered any hostile fire.  Exh. 10 at 18-20.  While time served in the U.S. Marines is indeed commendable, whether in

14

combat or not, it hardly shows that plaintiff was better qualified to be selected for certain positions at the Government Printing Office some thirty-four years later.

In that regard, plaintiff argues, without support, that he was entitled to a veteran's preference in connection with these selections. Plaintiff's Opp. at 12, ¶ 6. On the contrary, 5 C.F.R. § 211.102(c) makes clear that no veteran's preference exists for in-service promotions.

Plaintiff also faults Mr. Hall and Mr. Young for not learning more about him, claiming that if they had they would have discovered that plaintiff "was the only qualified leader in the pool of qualified applicants." Plaintiff's Opp. at 20. Again, plaintiff offers no evidence as to what specific information would demonstrate he alleged superior qualifications. As the Court of Appeals stated in Hardy, the "mere unsubstantiated allegation of superior qualifications creates no 'genuine issue of material fact' and will not withstand summary judgment." Id., 9 F.3d at 154, quoting Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986).

Plaintiff argues that Mr. Hall and Mr. Young made "unfair and unfounded assumptions" about his capabilities. Plaintiff's Opp. at 21. No such assumptions are set forth. Id. Plaintiff also argues that he was passed over for promotions in favor of two minority applicants "who were less qualified by objective

15

standards." Id. at 22.  Again, no detail is provided by plaintiff.  Id.

Plaintiff also vaguely contends that he was "more skilled in the actual functions of the department" but this vague assertion is meaningless.  Plaintiff's Opp. at 19.  He does not explain what "functions" he is referring to nor what "department" he means.  Id.  This conclusory statement gets plaintiff nowhere.

Finally, in a desperate attempt to latch on to something, plaintiff claims that Mr. Hall, his acknowledged friend,[5] failed to recommend him for promotion because Mr. Hall only recommended minorities.  See Plaintiff's Opp. at 22; Plaintiff's Exh. 6.  Plaintiff's purported statistic is meaningless, because plaintiff provides no evidence as to the make-up of the applicant pool with respect to the recommendations he identifies.  Id.  Moreover, plaintiff's own evidence shows that Mr. Hall has promoted five white employees during his tenure at GPO.  Plaintiff's Exh. 3 at 3; Plaintiff's Exh. 4 at 6.

Plaintiff's shot-gun approach to attacking defendant's dispositive motion is merely an attempt to cover up the fact that plaintiff cannot show that he was better qualified than Sarah

---

[5] Plaintiff makes the incomprehensible claim that the fact that he and Mr. Hall were friends adds to the likelihood that racial bias was a motivating factor in the selections.  Plaintiff's Opp. at 4, ¶ 8.  On the contrary, Mr. Hall's friendship with plaintiff, a Caucasian, makes the claim of racial bias on the part of Mr. Hall that much more unlikely.

Pitt or Charles Brown for the positions to which they were selected.  Under such circumstances, defendant is entitled to summary judgment on plaintiff's non-selection claims that remain at issue.

## CONCLUSION

Accordingly, for the reasons set forth above, and those set forth in defendant's prior memorandum, defendant submits that summary judgment should be granted to defendant.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226